UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                    Plaintiff,

– against –

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, *and* Y.K.,

                    Defendants.

**OPINION & ORDER**

25-CV-1108 (ER)

RAMOS, D.J.:

      Jane Doe, proceeding *pro se*, brought this action against the Trustees of Columbia University in the City of New York ("Columbia") and Y.K., asserting a deliberate indifference claim against Columbia pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), and a common law defamation claim against Y.K. Doc. 1 at 18–21. On February 14, 2025, Columbia filed a motion to seal and pseudonymize certain individuals identified in the complaint, requesting that: (1) Doe's complaint be sealed; (2) a public version of the complaint appear on the docket with the names of the individual defendant (Y.K.) and four non-parties (K.W., M.L., J.L., and S.J.) pseudonymized and redacted; and (3) the same pseudonymizations and redactions in the complaint be applied in all filings in this action. Doc. 8 at 1. The Court granted Columbia's motion in an order issued on February 21, 2025 ("February 2025 order"). Doc. 15 at 2. Before the Court is Doe's motion for reconsideration of the February 2025 order. Doc. 21. For the reasons set forth below, the motion is DENIED.

I.  **BACKGROUND**

Familiarity with the underlying facts of this action and related proceedings is assumed. *Doe v. Trustees of Columbia University in the City of New York et al.*, No. 21 Civ. 5839 (ER) (S.D.N.Y.) ("*Doe I*"); *Doe v. Trustees of Columbia University in the City of New York*, No. 25 Civ. 1108 (ER) (S.D.N.Y.) ("*Doe II*").[1] In sum, in *Doe I*, Doe alleged that while she was an undergraduate student at Columbia, she was sexually assaulted by a fellow student and that, when she filed a formal complaint with the university pursuant to Title IX, the university conducted a flawed investigation. Those facts and proceedings relevant to the instant motion for reconsideration are set forth below.

**A. Factual Background**

*1. The Parties*

Jane Doe is a former Columbia University student and a Chinese national. Doc. 1 ¶ 6.

Columbia is a non-profit corporation that manages, governs, and operates Columbia University and is responsible for its overall governance. *Id.* ¶ 8.

Y.K. is a former Columbia University student and a U.S. citizen. *Id.* ¶ 10. Doe designated him as a witness in the Columbia Title IX proceedings against former Columbia University student, John Roe. *See id.* ¶¶ 76–77; *see generally* Doc. 11.

*2. The Related Title IX Action, Doe I*

Doe commenced the Title IX action, *Doe I*, on July 1, 2021 against Columbia, as well as members of Columbia's Gender-Based Misconduct Office ("GBMO"), Kevin Pitt, Alyssa Anzalone-Newman, and Kristin Collado (collectively, "*Doe I* Defendants"),

---

[1] Unless otherwise noted, citations to "Doc. _" refer to documents filed in the instant Title IX and defamation case, *Doe v. Trustees of Columbia University in the City of New York*, No. 25 Civ. 1108 (ER) (S.D.N.Y.) ("*Doe I*").

seeking injunctive, declaratory, compensatory, and punitive relief. *Doe I*, Doc. 12 at 1. Doe alleged that the *Doe I* Defendants: (1) applied Columbia's outdated 2019 Gender-Based Misconduct Policy and Procedures for Students ("GBM Policy"), rather than its 2020 GBM Policy,[2] to her Title IX complaint; (2) acted with deliberate indifference in investigating her allegations; and (3) reached an erroneous outcome in recommending that Roe be found not responsible for sexual assault. *Id.* at 23–29.

Doe had reported to the GBMO in August 2019 that she was sexually assaulted by former Columbia University student, John Roe. *Id.* ¶ 85. Roe then filed a cross-complaint, alleging Doe had stalked him and caused him emotional distress. *Id.* ¶ 108. The GBMO conducted an investigation, including an interview with Y.K., ultimately recommending that: (1) Roe be found not responsible for sexual assault; and (2) Doe be found not responsible for stalking. *Id.* ¶ 166.

In *Doe I*, Doe filed a motion to proceed under a pseudonym on July 1, 2021, "since [the] litigation involve[d] matters that are highly sensitive and of a personal nature … allegations [that were] inherently private … the [c]omplaint include[d] privileged and confidential information" and doing so would "prevent unnecessary ridicule and reputation[al] harm" and "protect her rights of privacy as well as identity as a sexual assault victim…" *Doe I*, Doc. 3 at 1. The Court granted her motion and issued summonses for the *Doe I* Defendants. *See generally Doe I*, Doc. 8.

The *Doe I* Defendants filed a motion to dismiss the amended complaint on October 13, 2021, which the Court granted on August 25, 2022. *Doe I*, Docs. 46, 71. Doe filed a second amended complaint on September 27, 2022. *Doe I*, Doc. 73. The

---

[2] Doe alleged in her amended complaint that evidence and testimony that Columbia could have gathered from Roe and any witnesses remained excluded because Columbia did not apply its GBM Policy, effective on August 4, 2020, "outlin[ing] requirements for universities to allow expert witnesses and to offer the opportunity for parties to cross-examine witnesses at a live hearing through a party's chosen advisor" to her case. *Doe I*, Doc. 12 at 24–26. Instead, Columbia applied its GBM Policy, effective on August 23, 2019, which does not have such evidentiary requirements in favor of plaintiffs in its Title IX proceedings. *Compare Doe I*, Doc. 1-2 *with Doe I*, Doc. 1-3.

3

Court granted the motion to dismiss the second amended complaint and closed the case on June 27, 2023. *Doe I*, Doc. 85.

On December 20, 2024, Doe then filed a motion for reconsideration of the Court's June 27, 2023 final judgment, claiming that the 2024 Title IX Final Rules published by the Department of Education on April 19, 2024 should be applied retroactively to her case. *Doe I*, Doc. 96. Doe relied on the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*[3] to argue that the Court can choose to apply the 2024 Title IX statutes and regulations without deferring to agency guidance on retroactivity, given that "the role of the reviewing court under the Administrative Procedure Act (APA) is to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 603 U.S. 369, 371 (2024). The Court denied Doe's motion on January 3, 2025. *Doe I*, Doc. 97.

3.  *The Instant Title IX and Defamation Action, Doe II*

Doe commenced this action, *Doe II*, on February 5, 2025 against Columbia pursuant to Title IX and against Y.K. pursuant to state defamation law, seeking injunctive, declaratory, and compensatory relief. Doc. 1 at 1. Doe alleged that: (1) Columbia acted with deliberate indifference in failing to protect the privacy of Doe and Roe; and (2) Y.K. had defamed her in communicating with numerous peer students, directly and indirectly, about Doe and Roe's actions surrounding the Columbia Title IX proceedings. Doc. 1 at 18–21.

By letter dated February 14, 2025, Columbia requested that *Doe II* be related to *Doe I* because both cases: (1) are brought by the same plaintiff; (2) name Columbia as a

---

[3] The Supreme Court held in *Loper Bright* that "the command of the APA [is] that 'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret ... statutory provisions.'" 603 U.S. 369, 372 (2024). Doe alleged that "Title IX procedure was originally intended to offer a prompt and equitable resolution of complaints and to address issues internally before they escalate to legal action," but the "2020 and 2024 Title IX amendments… correct imperfections in its prior version," therefore "the 2024 [Title IX] rules should be given retroactive effect [here]." *Doe I*, Doc. 96 at 4–6.

4

defendant; and (3) concern overlapping factual allegations. *Compare Doe I*, Doc. 73 ¶¶ 23–94 *with Doe II*, Doc. 1 ¶¶ 26–69. The Court accepted the two cases as related on February 20, 2025. Columbia also filed a motion to seal the complaint and pseudonymize the names of the individual defendant, Y.K., and the four non-party, former students mentioned therein, M.L., J.L., S.J., and K.W., on February 14, 2025, arguing that the same protection against retaliation and privacy violations afforded to plaintiffs in Title IX matters should be afforded to defendants and non-parties as well. *See generally* Doc. 8.

In its February 14, 2025 motion, Columbia relied on case law illustrating that courts in this District and Circuit have generally pseudonymized student Title IX participants in federal litigation. *See, e.g.*, *Doe v. Yeshiva University*, 703 F. Supp. 3d 473, 483–84 (S.D.N.Y. 2023) (pseudonymizing student plaintiff and non-party in Title IX proceedings); *Doe v. Columbia University*, 831 F.3d 46, 48–49 (2d Cir. 2016) (pseudonymizing student plaintiff and defendant in Title IX proceedings); *Roe v. St. John's University*, 91 F.4th 643, 647 n.1 (2d Cir. 2024) (pseudonymizing student plaintiff, defendant, and non-party in Title IX proceedings). Doe objected to Columbia's motion via an email to the Court on February 21, 2025. The Court granted Columbia's motion on February 21, 2025. Doc. 15 at 2.

### B. Procedural History

Doe filed a motion for reconsideration on February 24, 2025 of the Court's decision to seal the original complaint and pseudonymize Y.K. and the four other students referenced therein. Doc. 17; Doc. 21 (same). Columbia filed an opposition to Doe's motion on March 6, 2025, arguing that, like Doe, the individual defendant and the four non-parties have privacy interests at stake and risk retaliation if their participation in the Title IX proceedings becomes known. Doc. 23. Doe replied to Columbia's submission in opposition on April 9, 2025, claiming that, unlike Doe, disclosure of the identities of the five individuals would not reveal confidential information protected by the Health Insurance Portability and Accountability Act (HIPAA), the Family Educational Rights

and Privacy Act (FERPA), or court protective order(s). Doc. 34 at 1–2.

Doe thereafter disregarded the February 2025 order by failing to pseudonymize Y.K. in two filings on June 6, 2025: a proposed clerk's certificate of default and an affirmation in support of the proposed clerk's certificate of default. *See* Docs. 48, 49. That same day, Columbia filed a second motion to seal and pseudonymize the five individuals, requesting that: (1) Doe's two June 6, 2025 filings be sealed on the docket; (2) Doe be ordered to file pseudonymized versions of them; and (3) Doe be ordered to seek permission from the Court prior to filing any document containing the name of any individual whom the Court ordered to be identified by pseudonym. Doc. 50.

On June 27, 2025, the Court granted Columbia's motion and directed Doe to re-file her documents. Doc. 63. Doe filed pseudonymized versions of the two documents on July 11, 2025. *See* Docs. 68, 69.

## II.    LEGAL STANDARD

### A.  Motion for Reconsideration

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citations omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

6

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Management Systems, Inc. Securities Litigation,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Where the movant fails to show that any controlling authority or facts have actually been overlooked and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (citing *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

### B. Motion for Pseudonymization

As a general rule, courts presume that any given action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). Behind this presumption is a fundamental belief that the public has a right to know who is using the courts and for what general purpose. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (citations omitted). Where the suit involves a defendant's specific actions or a particular incident, open proceedings also further the judiciary's interest in a fair and accurate adjudication. *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006). Moreover, in civil cases involving potentially damaging allegations about a defendant's conduct, "basic fairness" requires that plaintiffs disclose their real names. *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, No. 96 Civ. 175 (LAP), 1997 WL 171011, at *6 (S.D.N.Y. Apr. 10, 1997).

However, in certain extraordinary circumstances, particularly those that implicate serious individual privacy concerns, courts may, at their discretion, permit a litigant to proceed anonymously. *Doe v. City of New York*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001). In *Sealed Plaintiff*, the Second Circuit set out the standard for determining whether the given circumstances warrant such an exception, holding that "the plaintiff's interest in

7

anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." 537 F.3d at 189. The Second Circuit has provided guidance in the form of ten non-exhaustive factors that courts may use to assess that balance:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the … party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms … ; (4) whether the [party or non-party] is particularly vulnerable to the possible harms of disclosure … ; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether [a party] is prejudiced by [proceeding] anonymously … ; (7) whether [the parties'] identit[ies] ha[ve] thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring [the parties or non-parties] to disclose [their] identit[ies]; (9) whether … there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the [parties or non-parties].

*Sealed Plaintiff*, 537 F.3d at 190 (internal alterations, internal quotation marks, and citations omitted).

Although the ten factors in *Sealed Plaintiff* are highly instructive, courts are not required to consider all or any of them, nor are they required to use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion. *Id.* at 191 n.4. Notably, other courts have weighed the ten factors and determined matters involving sexual harassment to be highly sensitive and personal. *See A.B. v. C.D.*, No. 17 Civ. 5840 (DRH) (AYS), 2018 WL 1935999, at *2 (E.D.N.Y. Apr. 24, 2018) (in defamation suit, finding "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates—in part—to allegations of sexual harassment and misconduct"); *A.B. v. Hofstra University*, No. 17 Civ. 5562 (DRH) (AYS), 2018 WL 1935986, at *2 (E.D.N.Y. Apr. 24, 2018) (same).

### III. DISCUSSION

#### A. Denial of Motion for Reconsideration

8

Doe argues that reconsideration of the Court's determination to seal the complaint and pseudonymize the five individuals above is appropriate on the following grounds:

- Y.K. is named in the complaint for the "act of defaming others," which is "not highly sensitive or personal," even if it is related to the Columbia Title IX proceedings;

- M.L., J.L., and S.J. are "key witnesses to the defamation claim" and did not participate in the Columbia Title IX proceedings, thus "there is no sensitive or personal matter regarding them in the [c]omplaint";

- K.W.'s suicide "has been public knowledge since 2018 on the [I]nternet, in part because his family wants him to memorialized, raising awareness of campus suicide;

- Y.K., M.L., J.L., and S.J.'s conduct is not "solely in a 'university context'" but instead "[a]nyone with Internet access could view their public posts under their name[s]";

- Columbia "failed to present a single precedent where the defendant (and witness) proceeds in pseudonyms in a defamation suit";

- Columbia "did [not] ascertain [a] relevant factual basis to support its motion [and] … could [not] possibly measure the public interest in revealing these individuals' names versus their individual privacy interests"; and

- Y.K., M.L., J.L., and S.J. are not "third parties" protected by the privacy provision of Title IX but instead are identified for "their own conduct and involvement in the defamation suit…"

Doc. 21 at 2–4.

Assessing the motion for reconsideration as "[five] separate requests for [the] [de]pseudonymization" of Y.K., M.L. J.L., S.J., and K.W. as Doe requested, *id.*, the Court denies the motion on all grounds.

1. *Individual Defendant, Y.K.*

a. *The Highly Sensitive and Personal Nature of the Litigation*

Although Doe's claim against Y.K. is defamation, Y.K.'s conduct arose from his involvement as a witness in the underlying, highly sensitive and personal Title IX

9

proceedings and thus several *Sealed Plaintiff* factors weigh in favor of pseudonymization. *See* Doc. 1 ¶¶ 75–78. Doe claims that Y.K.'s "act of defaming others is not highly sensitive or personal, but the substance of those defamatory statements involving [Doe] and [] Roe is," a distinction that is not relevant here. Doc. 21 at 2. *See C.D.*, 2018 WL 1935999, at *2 (in defamation suit, finding "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates–in part–to allegations of sexual harassment and misconduct"); *Hofstra University*, 2018 WL 1935986, at *2 (same). Y.K.'s alleged defamation *pertains* to the Title IX proceedings, as the Court recognized when it accepted Columbia's request to relate *Doe II* and *Doe I*. *See* Doc. 11. *Compare Doe I*, Doc. 73 ¶¶ 23–94 *with Doe II*, Doc. 1 ¶¶ 26–69.

For this same reason, contrary to Doe's claim in the instant motion for reconsideration, Y.K. is a third party subject to the privacy provision in Title IX that is meant to prevent retaliation against participants as a result of their participation in a gender-based misconduct proceeding, *even if* "the reason [he is] identified in the [c]omplaint is because of [his] own conduct and involvement in a defamation suit" as a defendant now. Doc. 21 at 4. *See, e.g., Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (recognizing "privacy interests of innocent third parties" as a basis for redactions) (citation omitted); *see also Next Phase Distribution, Inc. v. Does 1-138*, No. 11 Civ. 9706 (KBF), 2012 WL 691830, at *2 (S.D.N.Y. Mar. 1, 2012) (granting defendant's request to keep his identity anonymous due to the highly sensitive nature of the claims).

While Doe criticizes Columbia for failing to present a single precedent where a defendant is named pseudonymously in a defamation suit, Doc. 21 at 3, doing so is not necessary when this defamation action is directly related to *Doe I*, in which Y.K. was pseudonymized because he was a witness in the underlying Title IX proceedings. Doe's factual allegations here demonstrate the close connection between Y.K.'s actions and those Title IX proceedings, as she claims that Y.K.: (1) "indirectly referred to [Doe] as

10

the person who had a Title IX case with John Roe in 2020"; and (2) "exposed John [Roe] to hundreds of others for his sexual assault." *Id.* at 4.

Furthermore, as discussed above, case law from this District and the Second Circuit illustrates that courts have generally granted pseudonymity in Title IX cases to students who participated in Title IX proceedings like those underlying this action. Doc. 8. *See, e.g.*, *St. John's University*, 91 F.4th at 647 n.1 (pseudonymizing student plaintiff, defendant, and non-party who the defendant also allegedly sexually assaulted). *See also Doe v. Trustees of Columbia University in the City of New York*, No. 23 Civ. 10395 (DEH) (S.D.N.Y.), Doc. 40 (granting Columbia's request to protect identity of student defendant in a Title IX action). More specifically, Columbia requires that identifying information related to Title IX matters remain confidential. *See* Gender-Based Misconduct Office, *Gender-Based Misconduct and Interim Title IX Policies and Procedures for Students*, COLUMBIA UNIVERSITY (Aug. 31, 2022), https://genderbasedmisconduct.columbia.edu/content/privacy.

In *Doe I*, Doe advanced an identical argument against redaction. There, Columbia requested that Y.K., then a non-party, remain pseudonymized, as he had been the multi-year litigation thus far. *Doe I*, Doc. 91. By letter dated December 6, 2024, Doe opposed the redaction and argued that Y.K.'s "act of defaming other students is not highly sensitive or personal," *Doe I*, Doc. 93, which mirrors the language she uses in the instant motion for reconsideration, Doc. 21 at 1. Despite Doe's opposition, the Court granted Columbia's proposed redactions on December 9, 2024. *Doe I*, Doc. 92. Here, the Court will not consider "repetitive arguments" as the basis for granting reconsideration. *Mikol*, 554 F. Supp. 2d at 500 (S.D.N.Y. 2008) (citation omitted). A motion for reconsideration is not meant to argue "issues already considered when a party does not like the way the original motion was resolved." *Peoples v. Fischer*, 898 F. Supp. 2d 618, 623–24 (quoting *Makas v. Orlando*, No. 6 Civ. 14305 (DAB) (AJP), 2008

11

WL 2139131, at *1 (S.D.N.Y. May 19, 2008)). Therefore, Doe's instant motion to unseal the complaint and de-pseudonymize Y.K. is denied.

### b. *Privacy Interests and Protection Against Retaliation and Other Harms*

The same *Sealed Plaintiff* factors that caused the Court to grant Doe's motion to proceed under a pseudonym in this action also apply to Y.K. Doe desired pseudonymization because "this litigation involves matters that are highly sensitive and of a personal nature," "allegations [that] are inherently private," and "confidential information from a university's Title IX proceeding" that, if made public, could cause "unnecessary ridicule and reputation[al] harm." Doc. 3 at 1. With pseudonymity, Y.K. will not be linked to the Columbia Title IX proceedings that his allegedly defamatory statements concerned, thus protecting the privacy of not only Y.K., but Doe herself. Even if Y.K. bears "[n]o risk of retaliation from the university" as Doe claims, Doc. 21 at 4, he still risks being targeted by the media, the general public, and even Roe if any one of them become aware of the particular defamation allegations against Y.K.

Y.K. and other potential witnesses are also less likely to be dissuaded from participating in university Title IX proceedings for fear of identification in related litigation if they remain anonymous in cases like this one. *See, e.g.*, *Doe v. Syracuse University*, 457 F. Supp. 3d 178, 206 (N.D.N.Y. 2020) (ordering redaction of names of decision-makers in student disciplinary proceedings because "faculty and staff would be less likely to volunteer to resolve cases" if their names were made public in litigation). Like Doe argued in support of her own pseudonymization, the pseudonymization of Y.K. prevents "chilling effects for those who [are] similarly situated if no anonymity [is] ensured." Doc. 21 at 3.

Moreover, permitting Y.K. to proceed anonymously will not prejudice Doe. As she has acknowledged, she is still "able to identify [Y.K.] based on the factual allegations in the [c]omplaint" and has the "uninhibited opportunity to litigate this matter regardless of whether [Y.K.'s] identity is disclosed publicly." Doc. 14 at 1–2. While Doe claims

"allowing [Y.K.] and the three key witnesses [former students M.L., J.L., and S.J.] to stay anonymous will immediately render this defamation suit pointless and perpetuate the harm [Doe] and John Roe have endured," Doc. 21 at 4–5, the pseudonymity of the former students ensures that *all* parties are able to engage in this litigation without public scrutiny, and without coercion or harm. The Court thus grants Y.K. the same protection given to Doe.

Doe argues that Y.K.'s identity need no longer be pseudonymized because his conduct was not "solely in [the] 'university context'" of the Columbia Title IX proceedings, but "across three social media platforms in 2020 … [and] [a]nyone with [I]nternet access could view [his] public posts under [his] name." Doc. 21 at 3. However, the social media posts that Doe provides in her motion do not alter that conclusion. She provides screenshots of the social media comments that Y.K. made *about* Roe's involvement in the Title IX proceedings. *Id.* at 7. As stated above, Y.K.'s alleged acts of defamation, by word of mouth and comments on social media platforms, are intertwined with the Title IX proceedings that he discussed in his public communications. The judicial interest in protecting the privacy and future participation of those involved in Title IX matters, including Y.K., sufficiently outweighs any public interest in linking Y.K.'s identity to the comments he made on and offline.

2. *Non-Party Former Students, M.L., J.L., and S.J.*

Due to the highly sensitive and personal nature of the litigation and the interest in protecting the privacy of the three non-party former students, who are also alleged to be sexual assault victims, the Court maintains their pseudonymity even in light of the presumption of public access to the federal courts. Courts have long recognized the privacy interests of non-parties, who often cannot seek pseudonym status for themselves. *See, e.g.*, *Spin Master, Ltd. v. Aomore-U.S.*, No. 23 Civ. 7099 (DEH), 2024 WL 3250815, at *2 (S.D.N.Y. June 28, 2024) (granting motion to seal documents that "implicate the interests of innocent third parties not presently before the Court"); *Giuffre v. Maxwell*,

13

Nos. 24-182, 24-203, 2025 WL 2055148, at *3 (2d Cir. July 23, 2025) (pseudonymizing identities of "non-parties whose privacy, reputation, or other interests may be implicated") (quoting *Giuffre v. Maxwell*, No. 15 Civ. 7433 (LAP) (S.D.N.Y. Mar. 31, 2020)). Both the Second Circuit and courts in this District also commonly pseudonymize non-party former students in Title IX cases. *See e.g.*, *Yeshiva University*, 703 F. Supp. 3d at 483–84; *St. John's University*, 91 F.4th at 647 n.1.

Contrary to Doe's argument, M.L., J.L., and S.J., like Y.K., are "third parties" subject to the privacy provision in Title IX meant to prevent retaliation against individuals as a result of their participation in a gender-based misconduct proceeding and ensure that victims feel safe reporting sexual harassment and participating in school investigation. *See* Doc. 21 at 3. While they did not participate in the underlying Title IX proceedings against Roe, Doe alleges that these former students each had a "negative [sexual] experience" on campus with an individual she alleges sexually assaulted her. Doc. 1 ¶¶ 83, 102, 108. The Court recognizes that Doe does not allege that the three former students were sexually assaulted. *See, e.g.*, Doc. 1 ¶ 103 ("Either no forced sexual intercourse happened, or they were unwilling to share such private details even anonymously."). However, given the possibility that they may be the victims of sexual assault like Doe herself, the Court upholds the longstanding practice of protecting the anonymity of victims of sexual abuse by sealing, redacting, or pseudonymizing their names. *See, e.g.*, *Doe v. Sarah Lawrence College*, No. 22 Civ. 05905 (NSR), 2022 WL 2866473, at *2 (S.D.N.Y. July 20, 2022) (permitting plaintiff to use a pseudonym for himself and alleged student victim in university sexual assault case); *see also Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (describing "sexual assault victims" as the "paradigmatic example of those entitled to a grant of anonymity") (citation omitted).

The additional, online social media evidence that Doe provides with her motion includes screenshots of social media comments that M.L. posted. Doc. 21 at 6–9. Again, the fact that those comments refer to the underlying Title IX proceedings demonstrate

how this defamation action relates to the Title IX action. On one post, M.L. discusses Roe's involvement in the Title IX proceedings, which could subject M.L. and/or Roe to public scrutiny to reveal information about the underlying matter. *Id.* at 6, 8. Also, though such social media posts may weigh against pseudonymizing M.L., that information does not bear on the other two former students, J.L. and S.J., who Doe does not allege posted similar comments.

Given the sensitive and private nature of the allegations here, the *Sealed Plaintiff* factors weigh in favor of pseudonymizing M.L., J.L., and S.J. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("[C]ourts have the power to insure [sic] that their records are not used to gratify private spite.") (internal quotation marks omitted). Further, Doe will suffer no prejudice if these three individuals remain pseudonymous. Doe will still "be able to identify [M.J., J.L., and S.J.] based on the factual allegations in the [c]omplaint" and has the "uninhibited opportunity to litigate this matter regardless of whether [their] identit[ies] [are] disclosed publicly." Doc. 14 at 1–2. In sum, Doe cannot point to any "controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *see also Linden v. District Council 1707–AFSCME*, 415 F. App'x 337, 338–39 (2d Cir. 2011) (affirming denial of reconsideration motion where movant did not identify any relevant facts or controlling authority that the lower court had overlooked).

3. *Deceased, Non-Party Former Student, K.W.*

The Court recognizes that pseudonymization may not be required to protect K.W.'s privacy interest because he is deceased, but his identification in Doe's allegations in the underlying Title IX proceedings, *Doe I*, and *Doe II* weigh in favor of maintaining his pseudonymity like the other former students above. *Cf. Rotger v. Montefiore Medical Center*, No. 15 Civ. 7783 (GHW), 2018 WL 11214575, at *2 (S.D.N.Y. Mar. 30, 2018) (acknowledging "diminished" privacy interest of unsealing the medical records of

15

deceased individual); *but see Spring v. Allegany-Limestone Central School District*, 14 No. Civ. 476S (WMS), 2021 WL 4166628, at *1 (W.D.N.Y. Sept. 14, 2021) (finding that diminished privacy interest of deceased individual still outweighed public's interest in access to particular judicial documents). The complaint does not reveal K.W.'s medical records, or the "HIPAA-protected data" that Doe defined as "confidential or privileged information" in her reply. *See* Doc. 34 at 1. However, Doe included K.W.'s suicide as an indication of the "longstanding insufficiency of mental health services at Columbia" in both the instant defamation action and in *Doe I*. Doc. 1 at 3; *see also Doe I*, Doc. 1. K.W.'s right to privacy over matters related to his health must be preserved.

Moreover, redacting K.W.'s name does not undermine any public interest in disclosure or cause any prejudice to Doe. Maintaining his pseudonymity in the context of this litigation in an abundance of caution is appropriate. Even though K.W.'s suicide itself has been "public knowledge since 2018 on the [I]nternet" and "his family wants him to be memorialized [by] raising awareness of campus suicide," K.W.'s suicide in 2018 is not included in Doe's factual allegations for its own sake, but rather as the event that led to Roe's invitation for Doe to come to his dorm room on the evening that the alleged sexual assault occurred. *Doe I*, Doc. 1 at 4–6; *Doe II*, Doc. 1 at 4–7. Keeping the identity of even deceased students protects them, as well as their peers, associates, and loved ones, from the violations of privacy, institutional retaliation, ridicule, and reputational harm that Doe was concerned about herself. Doc. 3 at 1. The Court therefore keeps the names of the deceased and non-deceased former students related to the underlying Title IX proceedings, including K.W., pseudonymized.

## IV.  CONCLUSION

For the foregoing reasons, the motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Docs. 17 and 21.

SO ORDERED.

Dated: August 12, 2025
       New York, New York

_____

Edgardo Ramos, U.S.D.J.