UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

               Plaintiff,

      – *against* –

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK, JOHN DOE 1,

             Defendants.

**OPINION & ORDER**

25-cv-01108 (ER)

RAMOS, D.J.:

      Jane Doe, proceeding *pro se*, filed this action against the Trustees of Columbia University in the City of New York ("Columbia") and individual Defendant John Doe 1 ("John Doe"), asserting deliberate indifference against Columbia pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), and common law defamation against John Doe.  Doc. 20 ¶¶ 142–69.  Before this Court are Columbia's motion to dismiss, Doc. 44; John Doe's motion to dismiss, Doc. 99; Jane Doe's motion for sanctions, Doc. 40; Columbia's cross motion for sanctions, Doc. 56; Jane Doe's motion to correct, Doc. 41; and Jane Doe's motion to seal, Doc. 54.  For the reasons set forth below, the motions to dismiss are GRANTED; and the motions for sanctions, motion to correct, and motion to seal are DENIED.

**I.      BACKGROUND**

      Familiarity with the underlying facts of this action and related proceedings, which are set forth in the Court's Opinion and Order denying motion for reconsideration of its decision to grant Columbia's motion to seal and pseudonyms, is assumed. [1] *Doe II*, Doc. 81.  Those facts and proceedings relevant to the instant motions are set forth below.

---

[1] In this opinion, the Court refers to the related action, *Doe v. Trustees of Columbia University in the City of New York et al.*, No. 21-cv-5839 (ER) (S.D.N.Y.), as *Doe I*, and refers to the instant action, *Doe v. Trustees of Columbia University in the City of New York et al*, No. 25-cv-1108 (ER) (S.D.N.Y.), as *Doe II*.

### A. The Parties

Jane Doe is a former Columbia University student and a Chinese national.  Doc. 20 ¶ 6.

Columbia is a non-profit corporation that manages, governs, and operates Columbia University and is responsible for its overall governance.  *Id.* ¶ 8.

John Doe is a former Columbia University student and a U.S. citizen.  *Id.* ¶ 10. Jane Doe designated him as a witness in the Columbia Title IX proceedings against former Columbia University student, John Roe.  *See id.* ¶¶ 76–77; *see generally* Doc. 11.

### B. *Doe I*

In *Doe I,* filed on July 1, 2021, Jane Doe alleged that while she was an undergraduate student at Columbia, she was sexually assaulted by a fellow student, John Roe, and that, when she filed a formal complaint with the University pursuant to Title IX, the University conducted a flawed investigation.  *Doe I*, Doc. 12 (Amended Complaint dated July 20, 2021).  Specifically, Jane Doe alleged that Columbia and members of its Gender-Based Misconduct Office ("GBMO"):  (1) applied Columbia's outdated 2019 Gender-Based Misconduct Policy and Procedures for Students ("GBM Policy"), rather than its 2020 GBM Policy, to her Title IX complaint; (2) acted with deliberate indifference in investigating her allegations; and (3) reached an erroneous outcome in recommending that Roe be found not responsible for sexual assault.  *Id.* at 23–29.

Defendants in *Doe I* filed a motion to dismiss the amended complaint on October 13, 2021, which the Court granted on August 25, 2022.  *Doe I*, Docs. 46, 71.  Jane Doe filed a second amended complaint on September 27, 2022.  *Doe I*, Doc. 73.  The Court granted the motion to dismiss the second amended complaint and closed the case on June 27, 2023.  *Doe I*, Doc. 85.  On November 25, 2024, Jane Doe filed a letter motion requesting a pre-motion conference for leave to file supplemental pleading under the Federal Rule of Civil Procedure 15.  *Doe I*, Doc. 89.  In the letter, she requested to file several new claims, including a Title IX indifference claim against Columbia for failure

to protect her privacy in the Gender-Based Misconduct ("GBM") proceedings and a defamation claim against John Doe, who was later named as an individual defendant in *Doe II*. *Id*. The Court denied the request on the basis of *res judicata*. *Doe I*, Doc. 92.

On December 20, 2024, Jane Doe filed a motion for reconsideration of the Court's June 27, 2023 final judgment, claiming that the 2024 Title IX Final Rules published by the Department of Education on April 19, 2024 should be applied retroactively to her case. *Doe I*, Doc. 96. Jane Doe relied on the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*[2] to argue that the Court could choose to apply the 2024 Title IX statutes and regulations without deferring to agency guidance on retroactivity, given that "the role of the reviewing court under the [Administrative Procedure Act ("APA")] is . . . to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 603 U.S. 369, 371 (2024). The Court denied Jane Doe's motion on January 3, 2025. *Doe I*, Doc. 97.

Jane Doe also appealed the Court's decisions to the Second Circuit. On September 21, 2021, she filed an interlocutory appeal of the order denying her leave to file a motion for summary judgment and staying discovery, *Doe I*, Doc. 43, which the Second Circuit dismissed for lack of jurisdiction, *Doe v. Trustees of Columbia University in the City of New York*, No. 21-2348 (2d Cir. filed Sept. 23, 2021) ("*Appeal #1*"), Doc. 39. She then filed a motion for panel reconsideration, *Appeal #1*, Docs. 42, 44, which both the Second Circuit panel and full bench of active members of the Second Circuit promptly denied, *Appeal #1*, Doc. 48. On June 29, 2023, she appealed this Court's decision to dismiss the second amended complaint, *Doe I*, Doc. 87. The Second Circuit

---

[2] The Supreme Court held in *Loper Bright* that "the command of the APA [is] that 'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret . . . statutory provisions.'" 603 U.S. 369, 372 (2024). Jane Doe alleged that "Title IX procedure was originally intended to offer a prompt and equitable resolution of complaints and to address issues internally before they escalate to legal action," but the "2020 and 2024 Title IX amendments . . . correct imperfections in its prior version," therefore "the 2024 [Title IX] rules should be given retroactive effect [here]." *Doe I*, Doc. 96 at 4–6.

affirmed. *Doe v. Trustees of Columbia University in the City of New York*, No. 23-960 (2d Cir. filed June. 29, 2023) ("*Appeal #2*"), Doc. 107. Jane Doe filed another petition for rehearing and rehearing en banc, *Appeal #2*, Doc. 113, which was denied, *Appeal #2*, Doc. 118. She subsequently filed a motion to recall the mandate. *Appeal #2*, Doc. 123. This motion was also denied. *Appeal #2*, Doc. 128.

### C. *Doe II*

Jane Doe commenced the instant action on February 5, 2025 against Columbia pursuant to Title IX and against John Doe[3] pursuant to state defamation law, seeking injunctive, declaratory, and compensatory relief. Doc. 20 ¶¶ 2–3.

In May 2020, John Doe was interviewed by Columbia as a witness for Jane Doe's GBM proceedings. *Id*. ¶ 77. During the interview, he was shown statements written by Jane Doe, which among other things, explained her concern that Roe might have procured sex from adult women within the Columbia community through social media. *Id*. ¶¶ 78–79. After learning this information, John Doe reached out to his mutual friends with Roe and asked whether anyone knew people who had had a "negative experience" with Roe. *Id*. ¶ 81. He also reached out to female students who had or might have had romantic relationships with Roe. *Id*. ¶ 82. Moreover, he told other students that Roe had been procuring sex through social media, including from minors and vulnerable girls who did not have many friends. *Id*. ¶ 94. He also encouraged female students who had had a "negative experience" with Roe to expose Roe's conduct and falsely represented that this was what Jane Doe wanted. *Id*. ¶ 97. In addition, John Doe requested friends of Roe to disconnect with Roe and falsely "made them believe" that this was Jane Doe's idea. *Id*. ¶ 123. He also identified Jane Doe as Roe's sexual assault victim to other students. *Id*. ¶ 122. In June 2020, Jane Doe informed Columbia that her written statements were misused and disseminated by John Doe. *Id*. ¶ 131. She requested privacy protection as

---

[3] Jane Doe used John Doe's actual name when she filed the complaint.

remedial support.  *Id.*  But Columbia later replied that they had to pause "the proceeding"[4] indefinitely.  *Id.* ¶ 133.  Columbia's response made Jane Doe afraid of participating in her GBM proceedings, and she eventually chose not to attend a hearing scheduled for June 2021 to protect her privacy.  *Id.* ¶ 135–36.

In the instant action, Jane Doe alleges that:  (1) Columbia acted with deliberate indifference in failing to protect her privacy and that of John Roe, leading to her decision not to attend her GBM hearing; and (2) John Doe defamed her in communicating with numerous fellow students, directly and indirectly, about Jane Doe and John Roe's actions surrounding the Columbia Title IX proceedings.  *Id.* ¶¶ 142–69.

On February 14, 2025, Columbia filed a motion to seal the complaint and pseudonymize the names of John Doe and four non-party, former students mentioned therein, arguing that the same protection against retaliation and privacy violations afforded to plaintiffs in Title IX matters should be afforded to defendants and non-parties as well.  *See generally* Doc. 8.  Jane Doe objected to Columbia's motion via email to the Court on February 21, 2025.  The Court granted Columbia's motion on February 21, 2025.  Doc. 15 at 2.  Accordingly, individual Defendant's name was changed to "John Doe 1" in the case caption, and prior filings containing his name and the names of the four non-party students were limited to only the parties to this action.

On February 24, 2025, Jane Doe filed a motion for reconsideration of the Court's decision to seal the original complaint and pseudonymize John Doe and the four other students.  Doc. 17; Doc. 21.  Pending the Court's ruling on the motion for reconsideration, Jane Doe filed a letter motion to correct clerical errors on May 22, 2025.  Doc. 41.  In the letter, she requests the Court to revise individual Defendant's pseudonym from "John Doe 1" to the initials of his name.  Doc. 41 at 2.  She argues that the Court

---

[4] It was unclear what proceeding Columbia was referring to in this reply.

did not and should not order how to pseudonymize an individual. *Id.* On August 12, 2025, the Court denied Jane Doe's motion for reconsideration. Doc. 81.

On May 9, 2025, Jane Doe filed a motion for sanctions against Columbia's counsel based on Columbia's motion to seal filed on February 14, 2025, and its March 6 memorandum in opposition to Jane Doe's motion for reconsideration of the Court's decision to grant the motion to seal. Doc. 40 at 1; Doc. 8; Doc. 23. On May 29, 2025, Columbia moved to dismiss the complaint as to Columbia. Doc. 44. On June 23, 2025, Columbia filed a cross-motion for sanctions against Jane Doe based on her motion for sanctions. Doc. 56. On September 11, 2025, John Doe filed a motion to dismiss the claim against him. Doc. 99.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The same standard applies to motions to dismiss in cases brought by *pro se* plaintiffs. *Davis v. Goodwill Industries of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Federal Republic of Germany*,

6

425 F.App'x. 5, 6 (2d Cir. 2011)).  The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest."  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Iqbal*, 556 U.S. at 678.  A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice.  *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

The principle of *res judicata* provides "that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action."  *Channer v. Department of Homeland Security*, 527 F.3d 275, 279 (2d Cir. 2008).  A court may consider whether claims in the instant action are barred by *res judicata* on a Rule 12(b)(6) motion to dismiss "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).  To evaluate the defense of *res judicata*, courts may take judicial notice of documents in a prior action.  *Charming Beats, LLC v. Hypebeast, Inc.*, No. 21-cv-7189 (AS), 2023 WL 5432294, at *1 (S.D.N.Y. Aug. 23, 2023); *see also Stapleton v. New York City Department of Education*, No. 22-cv-09351 (PAE) (SDA), 2023 WL 6163939, at *4 (S.D.N.Y. Sept. 6, 2023), *report and recommendation adopted*, No. 22-cv-9351 (PAE) (SDA), 2023 WL 6163141 (S.D.N.Y. Sept. 21, 2023).  Accordingly, the Court will take judicial notice of filings and its prior decisions in *Doe I* to evaluate Defendants' *res judicata* defense.

### B. Motion for Sanctions

Under Rule 11, by presenting a pleading to the court, an attorney certifies to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) the pleading "is not being presented for any improper purpose;" (2) the legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). A motion for sanctions is required to be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Pursuant to the Rule, the proposed motion must first be served on the party who allegedly violated the Rule. *Id.* The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court. *Id.*

Rule 11(c) allows the court to award sanctions if it determines that Rule 11(b) has been violated. *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2d Cir. 2008). In determining whether there has been a Rule 11 violation, courts apply "an objective standard of reasonableness." *Weinraub v. Glen Rauch Securities, Inc.*, 419 F. Supp. 2d 507, 512 (S.D.N.Y. 2005). The focus of the inquiry is whether there is "reasonable belief at the time of filing, not at some later time when facts are further revealed." *Vinuela v. S.S. Britanis*, 647 F.Supp. 1139, 1148 (S.D.N.Y. 1986). Rule 11 "serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created." *Id.* (internal citation and quotation marks omitted). Accordingly, the Second Circuit has instructed that "sanctions may not be imposed unless a particular allegation is utterly lacking in factual support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996); *see also E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 181 (S.D.N.Y. 2008). When it comes to legal contentions, "[t]he operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and

8

there is no reasonable argument to extend, modify or reverse the law as it stands."

*Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (internal quotation marks omitted).

### III.    DISCUSSION

#### A.  *Motion to dismiss*

##### *1.  Res Judicata*

Defendants argue that claims in *Doe II* are barred by *res judicata*.  Doc. 45 at 11, Doc. 100 at 5.  The Court agrees that the indifference claim against Columbia is barred by *res judicata* but not for the defamation claim against John Doe.

The principle of *res judicata* "provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action."  *Channer*, 527 F.3d at 279.  Specifically, claims in a subsequent litigation are barred if:  "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Soules v. Connecticut, Department of Emergency Services & Public Protection*, 882 F.3d 52, 55 (2d Cir. 2018).

##### *a.  The Claim against Columbia*

Jane Doe and Columbia dispute whether the Court entered a final judgement on the merits in *Doe I* and whether the claim against Columbia in *Doe II* could have been raised in *Doe I*.  Doc. 46 at 12; Doc. 59 at 6–7.

When the Court denied Jane Doe's request for leave to file a supplemental pleading in *Doe I*, it held that a final judgment on the merits has been entered in that action.  *Doe I,* Doc. 92 at 1.  Dismissal for failure to state a claim is a final judgment on the merits and has preclusive effect.  *Berrios v. N.Y.C. Housing Authority*, 564 F.3d 130, 134 (2d Cir. 2009).  The Court dismissed Jane Doe's second amended complaint in *Doe I* on June 27, 2023.  *Doe I*, Doc. 85.  Accordingly, a final judgement on the merits has been entered.

Jane Doe argues that no final judgment has been entered for the indifference to privacy claim because her request for leave to file a supplement pleading which would have included an indifference to privacy claim against Columbia, was denied for being premature. Doc. 59 at 3. First, as an initial matter, Jane Doe's request was denied not because it was premature, but because the anticipated new claims were barred by the Court's decision to dismiss the second amended complaint in *Doe I*. *Doe I*, Doc. 92. Jane Doe's claim against Columbia in the instant litigation may similarly be barred by the final judgement in *Doe I*. *Res judicata* bars "all other claims arising out of the same transaction or series of transactions" that formed the basis of the original suit even if those other claims are "based upon different theories." *Lipman v. Rodenbach*, 852 F.App'x. 578, 582 (2d Cir. 2021) (summary order) (internal citation omitted). The indifference claim in the instant action, although resting on a different theory from that in the second amended complaint in *Doe I*, can still be barred if it arises from the same transaction or series of transactions as the claim in *Doe I*.

The Court concludes that the *Doe II* indifference claim could have been raised in *Doe I*. For this element, the Court reviews whether the second action concerns the same nucleus of operative facts as the first one by considering three factors: "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." *Soules*, 882 F.3d at 55 (quoting *Channer*, 527 F.3d at 280). Here, the *Doe II* indifference claim arises from the same nucleus of operative facts as *Doe I*—the GBM proceedings. *See U.S. ex rel. Resnick v. Weill Medical College of Cornell University*, No. 04-cv-3088 (WHP), 2010 WL 476707, at *5 (S.D.N.Y. Jan. 21, 2010) (finding claims arising from the same core nucleus of operative fact when both claims were brought for false statements made by defendant in applications for the same grant).

10

Jane Doe argues that *Doe II* is different from *Doe I* in a number of ways, including the type of harassment involved, the causes of action, and the underlying legal theories. Doc. 59 at 6. She also argues that her claim against Columbia in *Doe II* is not barred because she could not have discovered the "new evidence" that privacy protection is a Title IX right until Title IX regulations made the right explicit in 2024, three years after *Doe I* was initiated.[5] Doc. 59 at 7. But courts look to overlap in facts rather than legal theories, in evaluating *res judicata* defense. "[A] party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brodsky v. N.Y.C. Campaign Finance Board by Weisman*, 796 F.App'x. 1, 6 (2d Cir. 2019). Accordingly, Jane Doe's claim against Columbia in the instant action is barred by *res judicata*.

### b. *The Claim against John Doe*

Individual Defendant John Doe also argues that Jane Doe's claim against him is barred by *res judicata*. The Court disagrees. To evoke *res judicata*, the parties in the subsequent litigation have to be the same parties in the first litigation or those in privity with them. *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002). Here, John Doe was not a party in *Doe I* or in privity with any of the parties. *Doe I*, Doc. 73.

### 2. *Time Bar*
### a. *The Claim against Columbia*

Title IX claims are subject to a three-year statute of limitations in New York. *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam); *Kane v. Mount Pleasant Central School District*, 80 F.4th 101, 104 (2d Cir. 2023). Columbia argues that Jane Doe's indifference claim is also untimely. Doc. 45 at 15. The Court agrees.

Jane Doe and Columbia dispute when the indifference claim accrued. Columbia argues that the claim accrued at the latest in July 2021, when the underlying GBM

---

[5] Jane Doe cites *Lipman*, where the Second Circuit held that one exception to *res judicata* arises when the plaintiff identified new evidence that could not have been discovered with reasonable due diligence before the first litigation. *Lipman*, 852 F.App'x. at 583. But Jane Doe misinterprets *Lipman*—by "new evidence," the court was referring to newly discovered factual evidence about the case, instead of newly learned knowledge of the law. *Id*. (referring amendment of the trust at issue as "newly discovered evidence").

proceedings were concluded. Doc. 45 at 15. Jane Doe, however, argues that the claim did not accrue until April 2024 when she discovered that "privacy protection is an implied Title IX right." Doc. 59 at 9.

A claim generally accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. S.E.C.,* 568 U.S. 442, 448 (2013) (internal quotation marks omitted); *see also Twersky v. Yeshiva University*, 579 F.App'x. 7, 9 (2d Cir. 2014). An exception to this standard rule—the discovery accrual rule—applies when a plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) (internal quotation marks omitted). Under such circumstance, a cause of action accrues when with reasonable diligence, the plaintiff has or should have discovered the critical facts of both her injury and the underlying causes. *Id.*

Here, Jane Doe's claim accrued when she became aware or should have become aware that Columbia failed to respond to her June 2020 complaint to the GBMO that John Doe defamed her. *See Twersky*, 579 F.App'x at 10 (holding that plaintiffs' Title IX indifference claim accrued when they were on notice of the school's awareness of and indifference to the abusive conduct at issue); *see also Austin v. Fordham University*, No. 21-cv-6421 (JPO), 2022 WL 4626485, at *4 (S.D.N.Y. Sept. 30, 2022) (similar). Jane Doe argues that according to the discovery accrual rule, her claim accrued when she learned of her injury—loss of her Title IX right—in April 2024 and cites to *Gabelli v. S.E.C.* 568 U.S. at 449–51 (when the injury is self-concealing, the discovery accrual rule provides that the claim does not accrue until the injured parties is aware of the injury). As a threshold matter, the discovery accrual rule only applies when a plaintiff would reasonably have had difficulty discerning the injury and its cause at the time it occurred. *A.Q.C.*, 656 F.3d at 140. Even if the rule applies here, however, Jane Doe's indifference claim did not accrue in April 2024 because under the rule, the claim accrued when Jane Doe discovered or should have discovered critical facts, not law, about her case. *See id.*

12

A plaintiff's ignorance of her legal rights does not defer accrual.[6]  *See Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008); *see also Keitt v. New York City*, 882 F.Supp.2d 412, 437 (S.D.N.Y. 2011).

Jane Doe argues that her indifference claim is entitled to equitable tolling because she was unable to discover "vital information that privacy protection is an implied Title IX right" until the Title IX regulation published in April 2024.  Doc. 59 at 8–9.  The Court disagrees.

A litigant seeking equitable tolling generally bears the burden of showing that: (1) she has been pursuing her rights diligently; and (2) some extraordinary circumstance stood in her way.  *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).  Equitable tolling is deemed "a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C.*, 656 F.3d at 144 (internal quotation marks omitted).  Those rare and exceptional circumstances do not include ignorance of law.  *Rosenwasser v. Fordham University*, 772 F.App'x. 1, 3 (2d Cir. 2019).  Accordingly, Jane Doe does not meet her burden to demonstrate that equitable tolling is justified on these facts.

Jane Doe reported John Doe's allegedly defamatory statements to Columbia in or around June 2020.  Doc. 20 ¶ 131.  Meanwhile, she alleges that she did not attend the disciplinary hearing scheduled for June 2021 as a result of Columbia's indifference. *Id*. ¶¶ 135, 153.  Thus, Jane Doe was on notice of Columbia's alleged indifference and thus her indifference claim accrued no later than June 2021.  She initiated the instant action on February 5, 2025, which is more than three years after her claim accrued.  *Id*.

---

[6] Jane Doe cites the dissenting opinion in *Mallet v. New York State Department of Corrections and Community Supervision* to support her argument that the injury she alleges is loss of a Title IX right, which occurred in April 2024, not loss of her privacy.  126 F.4th 125, 139 (2d Cir. 2025) (Menashi, J., dissenting); Doc. 59 at 8.  But dissenting opinions do not have precedential effect.  Moreover, upon reviewing the dissenting opinion, it is also unclear how the opinion supports Jane Doe's argument.

Accordingly, her claim against Columbia is independently dismissed for being untimely.
[7]

### b. *The Claim against John Doe*

Jane Doe's defamation claim against John Doe is also untimely. Defamation claims are subject to a one-year statute of limitations in New York. N.Y. C.P.L.R. 215(3). Under the single publication rule, the limitations period starts to run when the defamatory statement was first published. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003). A defamatory statement is published when it is shared to a third party. *Medcalf v. Walsh*, 938 F.Supp.2d 478, 485 (S.D.N.Y. 2013); *see also Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). If the defamatory statement is republished in a new format, however, the limitations period restarts on the date of republication. *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 276 (S.D.N.Y. 2016). Jane Doe does not allege that John Doe published any defamatory statement on or after February 5, 2024, a year prior to the initiation of the present litigation. Doc. 20. Accordingly, the defamation claim is untimely.

Jane Doe argues that her defamation claim is timely because: (1) the discovery accrual rule applies to her claim; and (2) the statute of limitations is equitably tolled. Doc. 101 at 5–8. Specifically, without further details, she argues that Columbia's failure to respond to her privacy complaint and John Roe's retaliation complaint in 2020

---

[7] The indifference claim was brought under Title IX. The complaint also invites the Court to retroactively apply the 2024 Title IX regulations as an alternative. Doc. 20 ¶ 157. To the extent that Jane Doe might argue that her claim against Columbia is not time barred because she brought this claim under the 2024 regulations, this argument does not make her claim timely. A federal district court vacated the 2024 regulations nationwide on January 9, 2025. *Tennessee v. Cardona*, 762 F.Supp.3d 615 (E.D. Ky. 2025). Following the vacatur, the Department of Education issued a Dear Colleague Letter stating that "no portion of the 2024 Title IX Rule is now in effect in any jurisdiction" and that it would enforce only the 2020 Regulations. U.S. Department of Education, Office of Civil Rights, Dear Colleague Letter on Title IX Enforcement Directive (Feb. 4, 2025), https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf. In addition, this Court has already held that the 2024 regulations do not have retroactive effect. *Doe v. Trustee of Columbia University in City of New York*, No. 21-cv-5839 (ER), 2025 WL 27472, at *2 (S.D.N.Y. Jan. 3, 2025).

"prevented [her] from obtaining vital information necessary to discover the defamation cause of action." *Id*. at 5. Jane Doe does not disclose what "vital information" she was referring to. *Id*. But it is well established in this district that defamation accrues when the statement is published. *Van Buskirk*, 325 F.3d at 89. Even a later discovery of the defamatory material itself does not restart the limitations period. *See e.g.*, *Button v. Doherty*, No. 24-cv-5026 (JPC) (KHP), 2025 WL 2776069, at *2 (S.D.N.Y. Sept. 30, 2025); *Kamdem-Ouaffo v. Pepsico, Inc*., 160 F.Supp.3d 553, 571 (S.D.N.Y.), *aff'd*, 657 F.App'x. 949 (Fed. Cir. 2016). Thus, the defamation claim clearly accrued more than a year prior to the initiation of this action. Moreover, the Court concludes that Jane Doe is not entitled to equitable tolling because she fails to show that any extraordinary circumstance stood in her way preventing her from asserting her rights earlier. *See Pace,* 544 U.S. at 418.

Meanwhile, Jane Doe argues that John Doe's false statements did not become defamation until they caused concrete harm—when she "learned that retaliation is a form of sexual harassment under Title IX, [rendering his] false statements defamation *per se*." Doc. 101 at 7. As discussed above, however, ignorance of law does not defer accrual or justify equitable tolling. *See Valdez*, 518 F.3d at 177; *Rosenwassery*, 772 F.App'x. at 3. Jane Doe's defamation claim is time barred.

### B. Motion for Sanctions
#### 1. Jane Doe's Motion for Sanctions
Jane Doe filed a motion for sanctions based on Columbia's February 14, 2025 motion to seal the complaint and pseudonymize former students as well as its March 6 memorandum in opposition to Jane Doe's motion for reconsideration of the Court's decision to grant the February 14 motion. Doc. 40 at 1; Doc. 8; Doc. 23. She argues that Columbia's counsel at the law firm Hecker Fink failed to conduct reasonable inquiry into the viability of these filings and made frivolous arguments. Doc. 40 at 4. She also argues

that Columbia lacked standing to request anonymity for the four non-party students. *Id*. The Court disagrees with each of her arguments.

Specifically, Jane Doe argues that Hecker Fink falsely claimed that: (1) John Doe is entitled to pseudonymization because the defamation claim arose from his involvement in Jane Doe's Title IX proceedings as a witness; (2) there are highly personal and sensitive allegations attributable to John Doe in the complaint; (3) the three female non-parties are innocent third-parties who had no opportunity to request pseudonymization; and (4) Jane Doe must prove that the identities of the female non-parties had been made public. *Id*. at 1–2.

Sanctions may not be imposed over a factual allegation unless it "is utterly lacking in support." *O'Brien*, 101 F.3d at 1489. Upon reviewing relevant filings, the Court concludes that Heck Fink did not make any statements that are utterly lacking in support. First, the defamation claim did arise from John Doe's involvement in Jane Doe's GBM proceedings as Heck Fink claimed. John Doe was interviewed by Columbia as a witness and was shown her written statements about the assault at the interview. Doc. 20 ¶¶ 75–79. As Jane Doe alleges in the complaint, John Doe started to engage in the alleged defamation after he learned about the statements at the interview. *Id*. ¶¶ 75–84. Accordingly, Hecker Fink's statement matches the facts in the complaint. Second, Hecker Fink did not allege the complaint involved sensitive information attributable to John Doe. Hecker Fink only claimed that the complaint involved "sensitive subject matter" and allegations of a "sensitive nature." Doc. 23 at 7–8. With these phrases, Hecker Fink was not implying that the complaint includes sensitive information specifically about John Doe. Rather, it argues that the sensitive nature of the allegations is "underscored by the fact that Plaintiff herself sought leave to proceed pseudonymously and employs pseudonyms for other non-parties." *Id*. at 8. Third, the three female students are not parties to this litigation, and nothing in the record suggests, nor does Jane Doe argue that they are aware of this litigation or have an opportunity to request

16

pseudonymization. Hecker Fink's statement matches the record. Additionally, Jane Doe's allegation that Hecker Fink required her to prove that the identities of the three former students had already been made public is a mischaracterization. In response to Jane Doe's claim that these former students are not innocent because one of them posted about John Roe on social media, Hecker Fink argued that "without clearer information about any prior public identification of this former student, such posts do not sufficiently undercut the interest in protecting her privacy in a case involving sensitive subject matter such as this one." *Id*. at 7–8. Hecker Fink was only pointing out the deficiency in Jane Doe's argument.

Jane Doe also argues that Hecker Fink made frivolous legal arguments because it: (1) feigned ignorance of FERPA, the First Amendment's presumptive right of access, and the applicable burden of proof; (2) misattributed statements Plaintiff made about herself and John Roe to the wrong individuals; (3) conflated the legal rights of Title IX complainants and respondents with those of Title IX witnesses; (4) mixed up legal standards for pseudonymization across different types of civil cases; and (5) misinterpreted legal requirements for identifying parties versus non-parties in a civil complaint. Doc. 40 at 6.

A legal argument is frivolous for purposes of Rule 11 sanctions only if it "has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Rubenstein v. Live Nation Ent.*, 272 F.Supp.3d 544, 546 (S.D.N.Y. 2017) (citation and quotation marks omitted). Hecker Fink's legal arguments are well supported by applicable law and not frivolous for purposes of Rule 11.[8] The Court granted its motion to seal and denied reconsideration. Doc. 15; Doc. 81.

---

[8] The misattribution allegation seemingly targets a factual statement, instead of legal argument, of Hecker Fink. From Jane Doe's motion for sanctions, it is not very clear which statement she was referring to. Upon reviewing the two filings at issue, the Court believes Jane Doe might be referring to Hecker Fink's statement that the three female former students had "negative sexual experience[s]" with John Roe. Doc. 23 at 7. This statement is not "utterly lacking in support" and thus not sanctionable because it is supported by the complaint. Doc. 20 ¶¶ 82–83.

Moreover, Jane Doe argues that Hecker Fink lacked legal standing to bring the pseudonymization request for the former students.[9] Doc. 40 at 7. Courts have long recognized the privacy interest of non-parties, who often cannot seek pseudonym status for themselves. *See, e.g., Spin Master, Ltd. v. Aomore-U.S.*, No. 23-cv-7099 (DEH), 2024 WL 3250815, at *2 (S.D.N.Y. June 28, 2024) (granting motion to seal documents that "implicate the interests of innocent third parties not presently before the Court"); *Giuffre v. Maxwell*, 146 F.4th 165, 171 (2d Cir. 2025) (pseudonymizing identities of "non-parties whose privacy, reputation, or other interests may be implicated") (quoting *Giuffre v. Maxwell*, No. 15 Civ. 7433 (LAP) (S.D.N.Y. Mar. 31, 2020)). Both the Second Circuit and courts in this district commonly pseudonymize non-party former students in Title IX cases. *See e.g., Doe v. Yeshiva University*, 703 F.Supp.3d 473, 483–84 (S.D.N.Y. 2023); *Roe v. St. John's University*, 91 F.4th at 647 n.1 (2d Cir. 2024). Accordingly, Hecker Fink's request to pseudonymize the former students is not a sanctionable frivolous legal argument.

For the foregoing reasons, Jane Doe's motion for sanctions is denied.

### 2. *Columbia's Motion for Sanctions*

Columbia cross moved to sanction Jane Doe for filing her motion for sanctions. Doc. 57 at 9–10. It requests the Court to impose a sanction requiring Jane Doe to seek permission from the Court before making any future filing in this or any related action. *Id*. at 10. The motion is denied at this juncture.

Columbia argues that Jane Doe's motion is sanctionable under Rule 11 for utterly lacking record support and having no legal basis. *Id*. at 10. As discussed above, Jane

---

[9] According to Jane Doe, a court can impose sanctions when "a reasonably competent attorney, acting under the circumstances presented, would have discovered" that there is no legal standing to file a case. *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20-cv-1391 (ER), 2023 WL 34377, at *13 (S.D.N.Y. Jan. 4, 2023). However, requesting a pseudonym for a non-party does not necessarily require standing because the Court has a responsibility to protect the privacy interest of non-parties. *Spin Master, Ltd. v. Aomore-U.S.*, No. 23-cv-7099 (DEH), 2024 WL 3250815, at *2 (S.D.N.Y. June 28, 2024).

Doe's motion fails on the merits. The Court, however, does not believe her factual statements are so utterly lacking in support that they warrant sanctions. District courts must make sanction decisions with restraint. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). The Second Circuit has held that "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (quoting *Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 467 (1st Cir.1993) (Breyer, C.J.)) (internal quotation marks omitted). Jane Doe bases her arguments on specific statements Hecker Fink made in its filings. Doc. 40 at 1–2. Although she may have misunderstood Hecker Fink's statements, the misinterpretation is not completely objectively unreasonable and thus does not warrant sanctions.[10] *See Penzo v. Consolidated Edison Co. of New York, Inc.*, No. 19-cv-07478 (MKV), 2024 WL 4467412, at *2 (S.D.N.Y. Oct. 10, 2024) (holding that sanction is not justified when the plaintiff mischaracterizes the defendant's request); *Kiobel*, 592 F.3d at 83 (finding no violation of Rule 11 when defendant unintentionally made a false statement).

In addition, standing alone, the fact that Jane Doe's motion is without merit does not warrant sanction, considering her *pro se* status. Although Rule 11 sanctions can be imposed on *pro se* litigants, the Court may consider "the special condition of litigants who are untutored in the law." *Maduakolam v. Columbia University*, 866 F.2d 53, 56 (2d Cir. 1989) (citing Fed. R. Civ. P. 11 advisory committee's notes); *Murawski v. Pataki*, 514 F.Supp.2d 577, 590 (S.D.N.Y. 2007). When reviewing motion for sanctions against *pro se* litigants, courts generally review whether the litigant acted in bad faith according to their litigation history as well as whether the litigant is aware that her practice is sanctionable. *Murawski*, 514 F.Supp.2d at 590; *Williams v. Office of Child Support*, No.

---

[10] *StreetEasy, Inc. v. Chertok*, cited by Hecker Fink, is distinguishable from the present action. 752 F.3d 298, 309 (2d Cir. 2014). In *StreetEasy*, the nonmoving party contended that he was not required to take certain actions that were clearly laid out in an agreement he signed, and the Second Circuit found this contention "flatly contradicted by the record." *Id.*

21-cv-8235 (PAE) (RWL), 2023 WL 2396354, at *4 (S.D.N.Y. Mar. 3, 2023), *report and recommendation adopted*, No. 21-cv-8235 (PAE) (RWL), 2023 WL 3967791 (S.D.N.Y. June 13, 2023).

Columbia argues that sanctions are warranted here, based on Jane Doe's ligation history and the fact that Columbia had warned Jane Doe of the sanctionable nature of her motion.  Doc. 57 at 12–13.  The Court, however, concludes that Jane Doe's motion does not warrant sanctions at this juncture, even considering her litigation history.  The decision whether to impose sanctions is a matter of the district court's discretion.  *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).  After the Court granted Columbia's motion to seal, Jane Doe filed a motion for reconsideration and the motion for sanctions at issue based on Columbia's filings related to pseudonymization.  Doc. 21, 40.  Although the Court advised Jane Doe that her motion for sanctions was not likely to be successful during the pre-motion conference, the Court had not issued any rulings with analysis of Columbia's motion to seal when Jane Doe filed the motion.  The Court ruled on Columbia's initial motion for pseudonymization through a memo endorsement without detailed analysis and had not ruled on Jane Doe's motion for reconsideration at that time.  When courts impose sanctions on *pro se* litigants, there are generally a higher number of redundant filings.  *See e.g.*, *Shekhem El v. Hiller*, No. 24-cv-730 (KMK), 2025 WL 888544, at *7 (S.D.N.Y. Mar. 21, 2025) (refusing to impose filing injunction when the plaintiff has filed four similar cases because "most courts that have enjoined future filings have done so after a far higher number of redundant complaints"); *Edwards v. Barclays Services Corporation*, No. 19-cv-9326 (GBD) (GWG), 2020 WL 3446870, at *4 (S.D.N.Y. June 24, 2020) (sanctioning *pro se* plaintiff after he had filed over 40 cases in Arizona state court and at least six in federal courts); *Williams v. Office of Child Support*, 2023 WL 2396354, at *4 (sanctioning *pro se* plaintiff in a third lawsuit after dismissing the same claim against the same defendant twice before).

But the Court also cautions Jane Doe going forward. In *Doe I*, after the Court entered a final judgment, Jane Doe requested leave to file a supplemental pleading involving substantively the same claims as those filed in the instant action. *Doe I*, Doc. 89. After the Court denied her request based on *res judicata*, she moved for reconsideration of the final judgement. *Doe I*, Doc. 96. The Court denied her motion. *Doe I*, Doc. 97. While litigating *Doe I*, Jane Doe also filed several appeals, which the Second Circuit denied for lack of merit. *Appeal #1*, *Appeal #2*. Thereafter, Jane Doe brought the instant action, which the Court denies again based on *res judicata*. Accordingly, although the Court does not impose any sanction on Jane Doe today for filing the motion for sanctions, the Court expressly cautions her against making frivolous filings, including claims barred by *res judicata*. *See e.g., Sassower v. Field*, 973 F.2d 75, 79–81 (2d Cir. 1992) (holding that federal courts can order *pro se* litigants to pay legal fees of the opposing party pursuant to courts' inherent power and Rule 11); *Williams v. Office of Child Support*, 2023 WL 2396354, at *7–8* (imposing filing injunction on *pro se* plaintiff).

### C. Motion to Correct Clerical Errors

Jane Doe requests the Court to change pseudonym John Doe 1 to the initials of his legal name. Doc. 41. She argues that the Court has authority to grant pseudonym but cannot order what specific pseudonym should be used. *Id*. at 2. The Court disagrees. Columbia requested the complete anonymity of John Doe, as demonstrated by their proposed redacted complaint. Doc. 9. It's common for courts to address an individual seeking complete anonymity by a fictitious name like John Doe. *See, e.g., Doe v. Yeshiva University*, 703 F.Supp.3d 473 (S.D.N.Y. 2023); *Doe v. Epiq eDiscovery Sols., Inc.*, No. 24-cv-9880 (MKV), 2025 WL 2613826 (S.D.N.Y. Sept. 10, 2025). Thus, Jane Doe's motion to correct is denied.

21

**D. Request for Sealing**

On June 13, 2025, Jane Doe filed a request to "seal the [m]otion to [s]eal." Doc. 54. However, it is unclear which motion to seal she was referring to because multiple motions to seal are on the docket as of the date she filed the instant motion. Doc. 8; Doc. 50. Accordingly, Jane Doe's request is denied without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss the complaint are GRANTED. The motions for sanctions filed by Jane Doe and Columbia, the motion to seal, and the motion to correct, are DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 40, 41, 44, 54, 56, 93, 99, and to close the case.

It is SO ORDERED.

Dated:    March 31, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

22